Jesse D. Franklin-Murdock (CA Bar No. 339034)
**SWEIGART MURDOCK, LLP**
1160 Battery Street, Suite 10
San Francisco, CA 94111
Tel.: (415) 873-0123
Email: Jesse@sm-llp.com

*Attorneys for Plaintiff Lynn Ogura*

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| LYNN OGURA, an individual,<br><br>Plaintiffs,<br><br>vs.<br><br>SHENKUN KAI, an individual,<br><br>Defendants. | Case No. _______________<br><br>**COMPLAINT; EXHIBITS 1–4**<br><br>**JURY TRIAL DEMANDED** |

## COMPLAINT

Plaintiff Lynn Ogura ("Plaintiff"), by and through her attorneys, Sweigart Murdock, LLP, for her Complaint against Defendant ShenKun Cai ("Defendant"), alleges and avers as follows:

### PARTIES

1. Plaintiff Lynn Ogura is an American citizen who currently resides in Japan, though she maintains a residence in the State of Texas, where she intends to permanently reside.

2. Defendant ShenKun Cai is an individual who is domiciled in the State of California.

### JURISDICTION AND VENUE

3. This Court has subject matter jurisdiction under 28 U.S.C. § 1332(a) because the parties are citizens of different states and the amount in controversy exceeds $75,000.

4. This Court has personal jurisdiction over Defendant because he is a resident of the State of California and because he committed the tortious acts herein in the State of California.

5. Venue is proper in this District under 28 U.S.C. §§ 1391(b)(1) and (2) because Defendant is a resident of the State of California and because a substantial part of the events giving rise to this action occurred in this District.

6. Intradistrict assignment to the San Francisco or Oakland Divisions of this District is proper under Local Civil Rule 3-2(d) because the case arose in the County of Alameda.

**FACTUAL ALLEGATIONS**

7. Plaintiff is a private person who has no fame or notoriety aside from any notoriety attributable to Defendant's defamatory publications about her. Nor has Plaintiff injected herself into any particular public controversy. Nor is Plaintiff a public official.

8. Plaintiff resides in Japan with her family, though she also maintains a residence in the State of Texas where she intends to reside permanently.

9. While living in Japan, Plaintiff became acquainted with Defendant.

10. In October 2025, Defendant told Plaintiff that he wanted to introduce his friend MingFang Zou ("Zou") to her. According to Defendant, Zou had come to Japan on May 17, 2025, after establishing what he described as a "paper company" to obtain a Japanese Business Manager visa. Defendant then asked Plaintiff to lend Zou 5 million yen as Japan had recently increased the financial investment requirement for the visa renewal at issue from 5 million yen to 30 million yen, and Zou needed a loan to help cover the difference.

11. In inducing Plaintiff to loan Zou the money, Defendant emphasized that that he and Zou had been close friends for more than ten years and assured Plaintiff that he would guarantee Zou's obligation to Plaintiff. Defendant further assured Plaintiff that the money would be repaid in Chinese RMB. Defendant thus urged Plaintiff to travel to Tokyo quickly to deliver the cash to Zou. Upon information and belief, Defendant and Cai were not in fact close friends for more than ten years but were simply members of an online reading group Cai organized.

12. Plaintiff explained to Defendant that she did not run a currency exchange, but Defendant nonetheless urged Plaintiff to help his friend.

13. Plaintiff therefore agreed to participate in the transaction, though her understanding was that she was helping someone Defendant personally vouched for rather than engaging in a currency exchange business.

14. On October 25, 2025, Plaintiff traveled to Tokyo where she delivered 5 million yen to Zou. When they met, Zou told Plaintiff that she had already transferred RMB 750,000 to Plaintiff's husband's bank account. Plaintiff was unable to confirm receipt of this transfer as it was a Saturday, and Plaintiff's husband was at work. Zou then attempted to transfer an additional RMB 250,000 to Plaintiff's bank account in her presence, but the transaction failed due to a restriction/anti-fraud limit. Plaintiff showed Zou that she had not received the funds, and Plaintiff later confirmed with her husband that he likewise did not receive the funds.

15. Plaintiff never received any RMB from Zou related to the 5 million yen she provided her. Plaintiff requested that Zou provide a receipt or written IOU, but Zou failed to do so. Zou's debt to Plaintiff remains outstanding.

16. In November 2025, Defendant once again asked Plaintiff to provide Japanese currency to a friend of this, this time an individual in Osaka named AiJao Yang ("Yang") who purportedly needed 2 million yen to sign a rental agreement. Plaintiff was initially reluctant to enter into another currency exchange transaction after failing to recover her money from the first transaction, but Defendant persuaded her to do so.

17. Plaintiff therefore transferred 1 million yen to Yang's bank account, and Plaintiff's daughter likewise transferred 1 million yen from her bank account to Yang's bank account, for a total of 2 million yen.

18. Yang never repaid Plaintiff the 2 million yen she borrowed from Plaintiff and her daughter.

19. Plaintiff thus engaged in two currency exchange transactions at Defendant's urging, and she did nothing wrong in either transaction. To the contrary, both transactions resulted in losses for Plaintiff as both counterparties failed to uphold their end of the transaction. Following these two transactions, Plaintiff would never again agree to participate in a currency exchange transaction.

20. Defendant was and is aware that Plaintiff did not receive the funds from Zou and Yang that she was supposed to receive, and Defendant had assured Plaintiff in private communications that they would repay Plaintiff.

21. Despite Defendant's awareness of Plaintiff's clean hands, Defendant published malicious falsehoods about Plaintiff in various posts on the social media platform X where he falsely accused Plaintiff of being a "scammer" among other false and defamatory statements.

22. Upon information and belief, Defendant's motive in making false claims about Plaintiff was to apply pressure to her as she was no longer willing to participate in currency exchange transactions at Defendant's behest. Indeed, in one private communication, Defendant told Plaintiff that he and his lawyer were waiting, and that Plaintiff and her family would "pay the price" (translated from Mandarin).

23. Upon information and belief, Defendant owns and controls the X account @cskun1989 under the pseudonym David Tsai. Prior to filing suit, Plaintiff's counsel sent a cease-and-desist letter to Defendant, and Defendant's counsel's response did not dispute Defendant's ownership of this X account. The @cskun1989 account has more than 469 thousand followers.

24. Plaintiff has reason to believe that Defendant owns and controls other X accounts that have posted malicious falsehoods about Plaintiff, and Plaintiff reserves the right to seek leave to amend her Complaint following further discovery regarding Defendant's use of other X accounts.

25. On or about July 20, 2026, Defendant, using the @cskun1989 account, posted the following ("Post 1")[1] above a screenshot of Plaintiff's X account, translated from its original Mandarin into English:

> I've always thought that the scammers on X, while numerous, at least leave some traces to follow. I never expected that this time, I'd truly witness what it means to be "caught off guard." This "Chang Jing" lives in Tokyo, and her account looks perfectly normal: posts about her husband, her children, food, and everyday life. By all appearances, she is an educated, sensible homemaker. Who would have thought that behind this seemingly authentic, warm account was a despicable scammer?

[1] Attached hereto as **Exhibit 1** is a true and correct copy of Post 1 and a certified translation of Post 1. Attached hereto as **Exhibit 4** is a certification of the translation.

> Last year, she suddenly sent me a direct message asking whether I had any friends who needed Japanese yen. She said she had yen and wanted to exchange it for renminbi. As it happened, I had a friend, also a longtime reader, who needed yen in Japan, so I let them contact each other and work out the details. I never expected my friend to fall, step by step, into the trap she had set.
>
> What makes it even more infuriating is that the scam itself was not particularly sophisticated. In hindsight, many parts of it even look rather clumsy. But a scammer's greatest skill has never been the complexity of the scheme; it is exploiting the most basic trust between people.
>
> Now, my friend, who was defrauded of more than one million renminbi, can only seek redress through legal channels. In Japan, civil litigation of this kind takes a long time, and the costs, including legal fees and court fees, are also quite high. Seeking to protect one's rights costs both time and money.
>
> Even now, I still cannot understand it: is it really worth it for someone with a husband, children, and a normal life to sacrifice her reputation and family, and even risk legal liability, just to swindle more than one million renminbi?
>
> Let this incident serve as a reminder to everyone: an "authentic persona" online is not the same as an authentic person. The photos may be real, and the life shown may be real, but the goodwill and honesty may not be. Whenever money changes hands, be sure to check and verify thoroughly, and do not readily trust the illusion created on social media.

26. Post 1 contains multiple false statements about Plaintiff, including, without limitation, referring to Plaintiff as a "despicable scammer," stating that Plaintiff caused Defendant's friend to be "defrauded of more than one million renminbi," and that Plaintiff "swindle[d] more than one million renminbi."

27. Plaintiff is not a scammer and did not scam, defraud, or swindle Defendant's friend at all, much less out of "more than one million renminbi."

28. Post 1 has been viewed over seven hundred thousand times on X, where it has garnered 900 comments, more than 200 reposts, more than 500 likes, and more than 100 bookmarks.

29. On or about July 21, 2026, Defendant, using the @cskun1989 account, posted the following ("Post 2")[2] above a photograph of Plaintiff and her family, translated from its original Mandarin into English:

---

[2] Attached hereto as **Exhibit 2** is a true and correct copy of Post 2 and a certified translation of Post 2. Attached hereto as **Exhibit 4** is a certification of the translation.

> Thank you, Suxin, for adding this information. I have never met Chang Jing in person. It was indeed rash of me to trust her so readily based only on limited online interaction. Fortunately, my friend has stayed on her trail and uncovered many of her previous despicable tricks. The photo below shows Changjing, her husband, and her mother.

30. Post 2 contains the following: "Fortunately, my friend has stayed on her trail and uncovered many of her previous despicable tricks."

31. Defendant's reference to Plaintiff's "previous despicable tricks" together with his publication of the photograph of Plaintiff's family reveals his malice toward Plaintiff and his effort to further the false narrative in Post 1 that Plaintiff is a "scammer."

32. On or about July 21, 2026, Defendant, using the @cskun1989 account, posted the following ("Post 3")[3] while quoting Post 1, translated from its original Mandarin into English:

> After I publicly exposed "Changjing's" fraudulent conduct, she not only failed to respond directly, but instead used the alternate account "Changnan" and direct messages to muddy the waters, maliciously insult and intimidate me and the victims, and even threatened to take action against me in California in August, claiming that she would have the United States deport me.
>
> Although facing such crude threats, I will not delete my posts, nor will I stop exposing her scams. In response to her intimidation, I will preserve the relevant evidence in accordance with the law and reserve the right to pursue legal accountability. I also support the victims in Japan in protecting their rights and interests through lawful channels, so that the scammer is ultimately punished by law.

33. Post 3 contains multiple false statements about Plaintiff, including, without limitation, that she "maliciously insult[ed] and intimidate[d] me and the victims" and that Defendant will not stop "exposing her scams." Defendant once again referred to Plaintiff as a "scammer."

34. Defendant's statement in Post 3 regarding his intent that "the scammer is ultimately punished by law" makes clear that Defendant's repeated references to Plaintiff being a "scammer" was tantamount to an accusation of criminal conduct.

35. Defendant made other posts on X to further his false narrative that Plaintiff is a "scammer."

[3] Attached hereto as **Exhibit 3** is a true and correct copy of Post 3 and a certified translation of Post 3. Attached hereto as **Exhibit 4** is a certification of the translation.

36. Upon information and belief, Defendant tried to further his false narrative that Plaintiff is a "scammer" in discussions with multiple third parties.

37. As a result of Defendant's false and defamatory statements about Plaintiff, Plaintiff has suffered grave injury to her reputation, experienced severe emotional distress, has been shunned and treated differently by others, has lost business and other opportunities, all resulting in significant disruptions to her personal and professional lives. Defendant's references and photographs of Plaintiff's family has caused Plaintiff to suffer additional distress and fear.

## CLAIM FOR RELIEF

### Count One: Defamation *Per Se*

38. Plaintiff realleges and incorporates by reference the preceding factual allegations as if fully set forth herein.

39. Defendant made false and defamatory statements of fact about Plaintiff, including (1) the statement in Post 1 that Plaintiff is a "despicable scammer," (2) the statement in Post 1 that Plaintiff caused Defendant's friend to be "defrauded of more than one million renminbi," (3) the statement in Post 1 that Plaintiff "swindle[d] more than one million renminbi," (4) the statement in Post 3 that Plaintiff engaged in "scams," and (5) the statement in Post 3 that Statement that Plaintiff is a "scammer."

40. Defendant published the false statements alleged above by posting them on X, which is a public platform where Defendant's posts are accessible to anyone with internet access.

41. Defendant's false statements about Plaintiff are not shielded by any applicable privilege.

42. Defendant's false statements about Plaintiff have a natural tendency to injure because they impute criminal conduct to Plaintiff, namely fraud and engaging in scams that are punishable by law.

43. While Plaintiff is not a public official, a public figure, or a limited purpose public figure, she can nonetheless establish that Defendant published the foregoing false statements about Plaintiff with a level of fault amounting to both negligence and actual malice. Plaintiff has never engaged in any "scam," either with respect to Defendant, Defendant's friend, or anyone else, so

Defendant cannot possibly have believed the truth of the allegations he made about Plaintiff. Moreover, Defendant was aware that Plaintiff had provided Zou and Yang with the agreed-upon funds but never received repayment of the same and had assured Plaintiff in private communications that she would be repaid, both of which indicate Defendant's knowledge that Plaintiff had not engaged in a "scam." Defendant's private communications to Plaintiff further indicate that Defendant made the defamatory statements about Plaintiff because of her refusal to engage in further currency exchange transactions.

44. As a result of Defendant's defamatory statements about Plaintiff, Plaintiff has suffered reputational injury, emotional distress, interference with personal and professional opportunities, and disruption to her life in an amount to be proven at trial.

45. Defendant acted with malice toward Plaintiff, thus entitling Plaintiff to an award of punitive damages, as evidenced by his repeated references to Plaintiff as a "scammer" despite knowledge that she had not engaged in any such scam.

## JURY DEMAND

46. Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiff demands a trial by jury on all claims and issues so triable.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for the following relief:

A. For general, special, and consequential damages in an amount according to proof.

B. For an award of punitive damages.

C. For attorney's fees and costs to the extent permitted by law or statute.

D. For such other and further relief that is just and proper.

Dated: October 20, 2026

Respectfully submitted,

/s/ *Jesse D. Franklin-Murdock*
Jesse D. Franklin-Murdock (CA Bar No. 339034)
**SWEIGART MURDOCK, LLP**
1160 Battery Street, Suite 100
Tel: (415) 873-0123

jesse@sm-llp.com

*Attorneys for Plaintiff Lynn Ogura*